IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET BRADLEY,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>LIBERTY LIFE ASSURANCE COMPANY<br>OF BOSTON,<br>　　　　Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br>No. 10-0311 |

**Goldberg, J.**　　　　　　　　　　　　　　　　　　　　　　　　　　　　**August 11, 2011**

### Memorandum Opinion

　　This case involves the construction of an Employee Retirement Income Security Act (ERISA) long-term disability policy. Before the Court are the parties' cross-motions for summary judgment under Fed. R. Civ. P. 56(a). For reasons stated herein, we will deny Plaintiff's motion for summary judgment while granting Defendant's motion for summary judgment.

**I.　　Factual Background**

　　The facts are taken from the record, and unless otherwise specified, are undisputed:

　　In 2005, Plaintiff, Janet Bradley, took a job with Lowe's Companies, Inc. Defendant, Liberty Life Assurance Company of Boston (Liberty), is the administrator of Lowe's group disability insurance policy. As a consequence of a "long history" of medical problems, Ms. Bradley became disabled while working for Lowe's, and began receiving benefits through the Liberty policy on February 8, 2007. (Compl. ¶¶ 1, 5, 10, 12.)

1

In addition to disability benefits provided under the Liberty policy, the Social Security Administration determined that Ms. Bradley was entitled to Social Security disability benefits as of September 2007. The Social Security Administration also determined that Ms. Bradley's son was entitled to receive dependent benefits under 42 U.S.C. § 402(d)(1) (2006), and in March 2009, her son received a check, directly from the Social Security Administration, for dependent benefits in the amount of $10,807.19. By the time he received the check, Ms. Bradley's son was no longer a minor or a dependent of Ms. Bradley. Thus, the payment was retroactive, covering the time during which he was a dependent. Ms. Bradley alleges that she received none of the benefits of the payment, an allegation that her counsel conveyed to Liberty on numerous occasions. (Compl. ¶¶ 15, 18-19, 21, 24, 29, 37.)

The Liberty Policy provides that any "Other Income Benefits" are to be deducted ("offset") from the amount of benefits paid by Liberty to the insured. Under the Policy, "Other Income Benefits" include:

> The amount of Disability and/or Retirement Benefits under the United States Social Security Act . . . which:
>
> a. the Covered Person receives or is eligible to receive; and
>
> b. his spouse, child or children receives or are eligible to receive because of his Disability; or
>
> c. his spouse, child or children receives or are eligible to receive because of his eligibility for Retirement Benefits.

(Stip. Tab. A, at LL-0027.) (emphasis removed).

The policy further states:

> Liberty shall possess the authority, in its sole discretion, to construe the terms of this policy and to determine benefit eligibility hereunder. Liberty's decisions regarding

>the construction of the terms of this policy and benefit eligibility shall be conclusive and binding.

(Stip. Tab A, at LL-0040.)

Based on the above policy language, Liberty determined that it was entitled to withhold Ms. Bradley's benefits in an amount equal to the payment made to her son by the Social Security Administration. The payment of $10,807.19 was "recovered in full" by Liberty in December of 2010.[1] (Compl. ¶¶ 21; Pl.'s Supp. Mem., Ex. 2.)

## II.     Legal Standard

Under Federal Rule of Civil Procedure 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Where the non-moving party bears the burden of proof on a particular issue at trial, the movant's initial Celotex burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the non-moving party's case." Id. at 325. After the moving party has met its initial burden, summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

---

[1] Beginning on January 24, 2010, Liberty withheld the entirety of Ms. Bradley's monthly benefit payment of $1,011.91. Liberty continued to withhold all of Ms. Bradley's benefits until November 23, 2010. Liberty withheld $688.09 from Ms. Bradley's check for the period of November 24, 2010 to December 23, 2010. Altogether, the withholdings amounted to $10,807.19. (Pl.'s Supp. Mem., Ex. 2.)

Where cross-motions for summary judgment have been filed, as is the case here, the following standards apply:

> In cases where the parties filed cross-motions for summary judgment, each side essentially contends that no issue of material fact exists from its perspective. We must, therefore, consider each motion for summary judgment separately. The standards under which we grant or deny summary judgment do not change because cross-motions are filed. Each party still bears the initial burden of establishing a lack of genuine issues of material fact. Such contradictory claims do not necessarily guarantee that if one party's motion is rejected, the other party's motion must be granted.

Williams v. Phila. Housing Auth., 834 F. Supp. 794, 797 (E.D. Pa. 1993), aff'd 27 F.2d 560 (3d Cir. 1994) (citations omitted).

### III. Discussion

The relevant law is straightforward. "[I]n reviewing a plan administrator's interpretation of an ERISA plan [a court] must first examine whether the terms of the plan document are ambiguous." Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001). A term is ambiguous "if it is subject to reasonable alternative interpretations." Id. If the policy is unambiguous, the plain language controls, and any action inconsistent with the plain meaning is arbitrary. Id.; Mellon Bank, N.A. v. Aetna Bus. Credit, Inc., 619 F.2d 1001, 1010 (3d Cir. 1980). However, if a court determines that a provision is ambiguous, it must take the additional step of determining whether the administrator's decision was arbitrary and capricious. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 111 (1989); Bill Gray Enters., 248 F.3d at 218. The question of whether an ERISA plan is ambiguous is a matter of law. In re Unisys Corp., 97 F.3d 710, 715 (3d Cir. 1996).

Plaintiff contends that, under the policy, Liberty is not allowed to offset Social Security payments received by her son that she neither received, nor was eligible to receive, herself. She argues that because of the "and," in between subparagraphs "a" and "b" of the "Other Income Benefits" provision, the policy language must be read "in the conjunctive," such that both subparagraphs are satisfied. (Pl.'s Mem. 4.) More specifically, Plaintiff's position is that "Other Income Benefits" "must be either received by the covered person as a result of the child's eligibility or the covered person must be eligible to receive the benefit but it is actually received by the child." (Pl.'s Opp. Mem. 2.) Plaintiff states that she received none of the benefits of the money paid to her son, that she does not have control over the funds, and that she does not know the name of the bank into which her son deposited the check. (Ex. 1 to Pl.'s Mot. for Judgment, at 2.) Thus, Plaintiff concludes that, since she neither received nor was eligible to receive the Social Security payment, it cannot be deducted from her benefits under the Liberty Policy.

I disagree with Plaintiff's reading of the pertinent policy provisions. The Policy reflects that Liberty is permitted to offset both payments that fall into subparagraph "a," and payments that fall into subparagraph "b." This reading is supported by precedent and logic. In In re Unisys Corp., the United States Court of Appeals for the third Circuit was asked to decide whether Unisys, a provider of long-term disability insurance, could offset Social Security payments made directly to an insured's dependents. The payments at issue were identical to the payments at issue here that Plaintiff claims are not included in the Liberty Policy. These payments were Social Security disability benefits paid to a dependent, which the disabled person was not entitled to receive, and which were the property of the dependent alone (a "dependent offset"). In re Unisys Corp., 97 F.3d at 716. The court examined the

5

language of the Policy, under which "Other Income Benefits" was defined as:

> The amount of disability or retirement benefits under the United States Social Security Act, The Canada Pension Plan, or the Quebec Pension Plan, or any similar plan or act, as follows:
> a. disability benefits for which:
> i. you are eligible, and
> ii. your spouse, child or children are eligible because of your disability.

Id. at 712.[2] The court found the language "specifically provided for dependent offsets." Id. at 716.

The Third Circuit has thus concluded that language similar to the language in the Liberty Policy allows offsets for dependent Social Security payments - namely, payments received by a child, which the covered person neither receives nor is eligible to receive. Accordingly, I find that subparagraph "b" of the Liberty policy unambiguously allows offsets for income that a covered person's child or spouse receives or is eligible to receive. Further, the offset under subsection "b" is separate and distinct from the offset for income that the covered person receives or is eligible to receive, which is covered under subparagraph "a."

I also reject Plaintiff's suggestion that both provisions must be satisfied in order for an offset to occur. That application would mean that Liberty would not be entitled to an offset for Social Security payments received by Ms. Bradley as a result of her own eligibility.[3] In fact, under Plaintiff's view of the Liberty Policy, Liberty would *never* be entitled to an offset where a single

---

[2] The case centered on a revised version of the policy, which stated only that long-term disability benefits "*you receive* may be adjusted if *you receive* . . . disability income from other sources." In re Unisys, 97 F.3d at 712. The court held that the revised policy language was unambiguous, and did not allow for dependent offsets.

[3] In 2009, after Liberty requested repayment of $15,178.50 Ms. Bradley had received from Social Security as a result of her disability, Ms. Bradley promptly wrote Liberty a check for the amount. (Def.'s Mem. in Supp. of Summ. J. 6.) If Plaintiff's position were correct, then Liberty would not have been entitled to the money, since Ms. Bradley did not receive the payment "as a result of" her son's eligibility.

person (e.g., no spouse or children) received Social Security disability payments. Such an interpretation is unsupported by the plain language of the Policy. See e.g., Atl. City Assocs., LLC v. Carter & Burgess Consultants, Inc., 2011 WL 1683099, at *5 (3d Cir. 2011) (interpreting New Jersey law, and noting that a contract is to be construed "according to its plain language, by reading the document as a whole in a fair and common sense manner").

Thus, I find that under the plain language of the Policy, to constitute an "Other Income Benefit," a Social Security payment need only satisfy subparagraph "a" or subparagraph "b;" it need not satisfy both. Based on that reading, all facts relating to whether Ms. Bradley enjoyed the benefit of the Social Security payment and whether her son was a minor at the time are irrelevant. Ms. Bradley's son is certainly her "child," and it is not disputed that he received benefits under 42 U.S.C. § 402(d)(1) because of Ms. Bradley's disability. The payment to Ms. Bradely's son therefore satisfies the requirements of subparagraph "b" and Liberty is entitled to offset the dependent benefit payment against the benefits owed to Ms. Bradley under the Policy.

Because I find that the language of the Liberty policy is unambiguous, I need not take the "additional step" of determining whether Liberty's interpretation of the policy was arbitrary and capricious. Bill Gray Enters., 248 F.3d at 218. Liberty was entitled to rely upon the plain language of the policy.

**IV.    Conclusion**

Given my finding that Liberty was entitled to offset the payment to Ms. Bradley's son,[4] Ms. Bradley's motion for summary judgment is denied, while Liberty's motion for summary judgment

---

[4] According to Plaintiff's "Supplemental Memorandum of Law in Support of Plaintiff's Motion for Judgment Pursuant to Fed. R. Civ. P. 56," Liberty has already recouped the $10,807.19 Plaintiff owes.

is granted.

      An appropriate Order follows.